PEOPLE ex rel. MEYERS v. DILLON et al.

(Supreme Court, Appellate Division, Second Department. December 12, 1899.)

1. MANDAMUS—CONTROVERTING AFFIDAVIT—EFFECT.
   Where a statement in the affidavit for mandamus is controverted by an affidavit in defense, the latter must be assumed to be true.

2. MUNICIPAL CORPORATIONS—PATROLMEN—REMOVAL.
   New Rochelle City Charter, §§ 114, 256, continues the patrolmen of the former village as a part of the police force of the city, and section 119 provides for their removal only for incompetency or misconduct, after written charges, notice, and hearing before the police commissioners. *Held*, that a village patrolman could not be removed, and his position filled by the appointment of another, except for incompetency or misconduct, as the charter provides, though he had previously applied to the police commissioners for the position of patrolman under the city government.

Appeal from special term, Westchester county.

Application for mandamus by the people, on the relation of Charles F. Meyers, against Michael J. Dillon, mayor of the city of New Rochelle, and others, to compel relator's reinstatement as a patrolman of such city. From an order directing the issuance of a peremptory writ, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Michael J. Tierney, for appellants.
J. Addison Young, for respondent.

GOODRICH, P. J. The city of New Rochelle was incorporated by chapter 128 of the Laws of 1899, which became a law March 24th. Section 254 provided that the corporation known as the "Village of New Rochelle," which had previously existed, should be dissolved on the fourth Tuesday of April (25th), when the terms of office of all

officers of the village should expire, except as otherwise provided in the act, and that the duties and obligations of the village should then be imposed upon the city. Section 256 provided that the police commissioners of the village should be the police commissioners of the city, and that "the police officers and patrolmen of said village shall be the police officers and patrolmen of said city." Section 259 provided that the first election of city officers should be on the third Tuesday of April (18th). Section 10 provided that among the officers of the city there should be "not to exceed ten patrolmen." Section 114 provided that "the patrolmen of the village of New Rochelle shall, from the time this act takes effect, be ＊ ＊ ＊ patrolmen of the city of New Rochelle, and, with the patrolmen to be appointed by the board of police commissioners, shall constitute the police force of the said city." Section 119 provided for the removal of any member of the police force for incompetency or misconduct, after written charges, notice, and hearing before the police commissioners. The relator, Meyers, was appointed a patrolman of the village April 15, 1896, and served continuously down to May 31, 1899. On April 24th he subscribed and filed with the city clerk his oath as a patrolman of the city, and was paid for his services down to May 31st, when he was informed by the chief of police that his services were required no longer, and that he was no longer in the service. Subsequently, his shield was taken from him. The ground of this action was stated as follows: The relator swears that on May 17th, at a meeting of the police commissioners, he was requested to and did sign a paper addressed to them, as follows: "I, the undersigned, do hereby respectfully make application for appointment as patrolman of the city of New Rochelle. Dated May 17, 1899." The relator claims that he was persuaded improperly to sign the application by a statement that it was a mere matter of form, but, as the affidavit of Mr. Dillon, the mayor of the city, contradicts this statement, we must assume on this appeal that the latter's affidavit is true. After the relator signed the paper, it appears, at a meeting of the board of police commissioners held May 17th, the following occurred: "Application of Charles Meyers for appointment as patrolman of the city of New Rochelle, N. Y., was read, and on motion it was voted that the application for said appointment be, and hereby is, denied; the roll call showing the following vote: Ayes, Coe, Manning, Emmet; nays, none."

By his application the relator waived none of his rights under the charter, and the action of the police commissioners was without authority, and illegal. The act in explicit terms continued the relator in office, subject only to removal for incompetency or misconduct, and it is not alleged that any such proceedings were taken. That the police commissioners have made 10 appointments makes no difference. They had no power to make any appointment which supplied or filled the position of the relator. It is not necessary for us to designate which of the 10 appointments of patrolmen was illegal, nor have we sufficient evidence to enable us to do so. It does not appear whether any person was appointed specifically to fill the position of the relator. It is not a case where a single officer is under

consideration, as in People v. Goetting, 133 N. Y. 569, 30 N. E. 968, where the office was that of the clerk of a district police court, and it was held that the remedy was by quo warranto instead of by mandamus, on the ground that the office was already filled by a person claiming under color of right, and drawing salary. The charter act found the relator in office as a patrolman of the village, and in express terms continued him as a patrolman of the city. The attempted exclusion of him therefore was illegal and void.

It follows that the order should be affirmed, with costs. All concur.